Ryan Koppelman (State Bar No. 290704)
**ALSTON & BIRD LLP**
1950 University Ave, 5th Floor
East Palo Alto, CA 94303
Telephone: 650-838-2000
E-mail: *ryan.koppelman@alston.com*

Jason D. Rosenberg (admitted *pro hac vice*)
Pamela Councill (admitted *pro hac vice*)
Max E. Rubinson (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: 404-881-7000
Email: *jason.rosenberg@alston.com*
Email: *pamela.councillr@alston.com*
Email: *max.rubinson@alston.com*

*Attorneys for Plaintiffs Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| NUTRAMAX LABORATORIES, INC. and NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> FARNAM COMPANIES, INC. and CENTRAL GARDEN & PET CO., <br><br> Defendants. | Case No. 4:18-cv-06749-YGR <br><br> Hon. Yvonne Gonzalez Rogers <br><br> **JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br> Date: February 25, 2019 <br> Time: 2:00 pm <br> Crtrm.: 1 |

Case No. 4:18-cv-06749-YGR

JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER

Pursuant to the Clerk's December 6, 2018 Notice Setting Case Management Conference, Dkt. No. 21, all parties herein, through their respective counsel, respectfully submit the following joint statement in advance of the February 25, 2019, Case Management Conference.

**1.      Jurisdiction and Service.**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because this case arises under the Lanham Act 15 U.S.C. § 1051, *et seq.* All parties agree that this Court has personal jurisdiction over them and that venue is proper in this Court. All parties agree that defendants Farnam Companies, Inc. ("Farnam") and Central Garden & Pet Co. ("Central") (collectively, "Defendants") have been served and that no other parties remain to be served.

**2.      Facts.**

**A.      Plaintiffs' Summary of the Facts**

Together, Plaintiffs Nutramax Laboratories, Inc. ("Nutramax Labs") and Nutramax Laboratories Veterinary Sciences, Inc. ("Nutramax Veterinary Sciences") (collectively, "Nutramax" or "Plaintiffs") research, develop, and market high-quality, innovative health supplements that benefit animals and humans. Since 1992, Nutramax, on its own and through its licensed affiliates and resellers, has sold its health supplement products across the United States through a diversified portfolio of well-recognized and widely-trusted brands. Nutramax's health supplement products are widely regarded as the gold standard in the nutritional supplement industry because they are supported by research studies, contain verified and validated active ingredients from reliable sources, and are manufactured in accordance with strict standards that ensure consumers receive a high-quality, safe, and effective product. In fact, the active compounds used in its health supplement products adhere to strict purity and quality standards, which differentiates Nutramax's products from many other products on the market.

Over the years, Nutramax has spent millions of dollars researching and developing its innovative health supplement products, and has devoted significant financial resources each year to marketing as well. By virtue of Nutramax's commitment to the development and testing of its products, Nutramax has become acclaimed for its high-quality health supplement products.

Nutramax's products are some of the most well-known and respected in the industry, and many are the most frequently recommended products by veterinarians in their respective categories.

Nutramax's products include its Cosequin® line of joint health supplement products containing, *inter alia*, glucosamine and chondroitin sulfate. Nutramax's Cosequin® products help support joint health in animals, including in cats, dogs, and horses. Nutramax has established a considerable market in the United States for its Cosequin® products and receives substantial revenue from its Cosequin® products. Over the years, Nutramax has devoted significant resources researching, developing, and marketing its Cosequin® products. Specifically, Nutramax has worked extremely hard to ensure that the quality of its Cosequin® products is extraordinarily high and that these products meet all label claims. To that end, Nutramax has conducted countless experiments and tests, grounded in scientific methods, to rigorously establish the safety and efficacy of its Cosequin® products. Because of Nutramax's hard work in developing and testing its Cosequin® products, these products have become acclaimed worldwide.

Defendants sell a Farnam-branded joint health supplement product for horses marketed under the name "MaxFlex XR Extended Release Joint Formulation" (the "MaxFlex XR product"). Defendants have and continue to make false or misleading statements regarding the amounts of active ingredients in Defendants' MaxFlex XR product. These false or misleading statements appear on product labeling, on product packaging, and in marketing materials for Defendants' MaxFlex XR product. For instance, Defendants' claim that the MaxFlex XR product contains 5,000 mg of glucosamine and 100 mg of methylsulfonylmethane ("MSM"). Plaintiffs' testing, however, reveals that Defendants' MaxFlex XR product contains only 85%, approximately, of the stated amount of glucosamine, and only 12%, approximately, of the stated amount of MSM. Further, Defendants have and continue to make false or misleading statements regarding the relative performance of Nutramax's Cosequin® products and Defendants' MaxFlex XR product. For instance, the product packaging for Defendants' MaxFlex XR product includes unverified statements that the MaxFlex XR product "outlasts" an unidentified Cosequin® product. Defendants' false or misleading statements are likely to cause consumer confusion, mistake, or deception as to the relative quality, effectiveness, and reliability of Defendants' MaxFlex XR

product and Nutramax's Cosequin® products.  Nutramax thus sued Defendants for false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Nutramax seeks actual damages, Defendants' wrongful gains, treble damages, punitive damages, attorney's fees and costs, and permanent injunctive relief.

### B. Defendants' Summary of the Facts

Defendants contend that all of the foregoing statements were verified by internal research and are not false or misleading.  Plaintiffs' marketing department carefully watches the market for competitive products and Plaintiffs have an extensive testing program for them.  Defendants have marketed and sold their MaxFlex XR product for over eleven years, in substantially the same packaging, with substantially the same web site, and making substantially the same claims.  Defendants contend that for a period of years prior to the expiration of the relevant statute of limitations period, Plaintiffs were aware of the claims being made by Defendants and did not complain to Defendants or bring legal action.  The delay in bringing this cause of action has caused, and will continue to cause, prejudice to Defendants.  They invested resources in promoting the MaxFlex XR product using these claims, and Plaintiffs now seek to compel Defendants to abandon their presentation of MaxFlex XR, forcing them to adopt a materially different characterization of their product.  If Plaintiffs had filed suit sooner, Defendants could have invested their resources in shaping an alternative identity for MaxFlex XR in the minds of the public.

### 3. Summary of Legal Issues.

At this early stage, the parties anticipate the key legal issues will be the following:

- Did Defendants engage in in false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)?
- If so, did Defendants willfully and deliberately engage in such false advertising?
- Are Plaintiffs entitled to monetary recovery – whether actual damages, disgorgement of profits, and/or punitive damages – and if so in what amount?
- Is this an "exceptional case" under the Lanham Act such that Plaintiffs entitled to attorneys' fees and costs, and, if so in what amount?
- Are Plaintiffs entitled to permanent injunctive relief, and, if so, in what form?

- If Plaintiffs prevail on their claim of false advertising, is their claim barred by the doctrine of laches?

4.   **Motions.**

Currently, there are no pending motions before this Court in this action. Both parties anticipate that they will file motions for summary judgment and/or partial summary judgement. At this juncture, the parties do not anticipate that they will file any other early dispositive motions. The parties, however, reserve the right to serve and file additional motions as the need arises.

5.   **Amendment of Pleadings.**

At this time Plaintiffs do not anticipate amending the pleadings. In the event that Plaintiffs discover, through the discovery process or their own further investigation, additional parties or entities responsible for the false or misleading statements concerning Defendants' MaxFlex XR product and/or Plaintiffs' Cosequin® products, Plaintiffs will likely seek to amend the complaint to include those additional parties or entities. Defendants may move to amend their Answer to include a counterclaim and may also move to assert additional defenses depending on what is learned in discovery.

6.   **Evidence Preservation.**

The parties have reviewed the ESI Guidelines and confirm that they have met and conferred regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evidence in this action.

7.   **Disclosures.**

The parties have agreed to exchange initial disclosures on or before March 11, 2019.

8.   **Discovery.**

The parties have discussed the discovery they anticipate serving. Each side anticipates noticing depositions of Rule 30(b)(6) representatives and serving written discovery in the form of document requests, interrogatories, and potentially requests for admissions. The parties may notice additional depositions – *e.g.*, depositions of witnesses disclosed in initial disclosures – but require additional information before determining the scope of those additional depositions. The parties intend to enter into a stipulated protective order protecting certain confidential and

commercially sensitive information that may be disclosed in discovery. Because this case is likely to involve expert testimony, the parties anticipate taking expert discovery. Counsel have, to date, worked collaboratively and professionally together, and they will endeavor to do so throughout the discovery process so as to avoid unnecessary motion practice.

**9.   Class Actions.**

This is not a class action.

**10.  Related Cases.**

There are no related cases pending before this Court or any other court.

**11.  Relief.**

Plaintiffs seek actual damages, Defendants' wrongful gain, treble damages, punitive damages, attorney's fees and costs, and permanent injunctive relief. The amount of actual damages and wrongful gain requires additional discovery.

**12.  Settlement and ADR.**

The parties intend to stipulate to mediation under ADR L.R. 6, with mediation to occur within 90 days from the date of the order referring the case to ADR. The parties are also amenable to participating in a settlement conference with a Magistrate Judge if the Court believes such a conference would be beneficial.

**13.  Consent to Magistrate Judge for all Purposes.**

The parties have not consented to a Magistrate Judge for all purposes.

**14.  Other References.**

The parties do not believe any other references are appropriate at this time.

**15.  Narrowing of Issues.**

At this time, the parties do not believe there are issues that can be narrowed by agreement or motion. As stated above, the parties respectively intend to move for summary judgment and/or partial summary judgment after obtaining discovery.

**16.  Expedited Trial Procedure.**

The parties do not believe this case is appropriate for the Expedited Trial Procedure of General Order 64, Attachment A.

17. **Scheduling**

    A.    **Proposed Schedule**

| | |
|---|---|
| FRCP 26(a) Initial Disclosures | March 11, 2019 |
| Close of non-expert discovery | September 30, 2019 |
| Opening expert reports | November 29, 2019 |
| Rebuttal expert reports | January 17, 2020 |
| Close of expert discovery | Feb. 28, 2020 |
| Last day for serving motions other than motions *in limine* | April 24, 2020 |
| Last day for hearing motions | June 22, 2020 (6 weeks before trial) |
| Last day for personally serving motions *in limine* | July 6, 2020 (4 weeks before trial) |
| Lodge pretrial documents | July 13, 2020 (3 weeks before trial) |
| Final Pretrial Conference | July 20, 2020 (2 weeks before trial) |
| Trial | August 3, 2020 |

18. **Trial.**

    The case will be tried to a jury. The parties estimate a 5-7 day trial. This will depend on the number of experts and what issues remain in the case after summary judgment motions.

19. **Disclosure of Non-Party Interested Entities or Persons.**

    Both parties have filed their Certification of Interested Entities or Persons required by Civil Local Rule 3-15. Plaintiffs submit that the only applicable entities required to be disclosed are Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. Defendants submit that the only applicable entities required to be disclosed are Farnam Companies, Inc., and Central Garden and Pet Co.

20. **Professional Conduct**

    Counsel have reviewed the Guidelines for Professional Conduct for the Northern District of California.

|   |   |   |
|---|---|---|
|   |   | Respectfully Submitted: |
| Dated: February 4, 2019 |   | ALSTON & BIRD LLP |

By: */s/ Ryan W. Koppelman*

Ryan W. Koppelman (SBN 290704)
**ALSTON & BIRD LLP**
1950 University Avenue, 5th Floor
East Palo Alto, CA 94303
Telephone:    (650) 838-2000
Facsimile:    (650) 838-2001
ryan.koppelman@alston.com

Jason D. Rosenberg (admitted *pro hac vice*)
Pamela Councill (admitted *pro hac vice*)
Max E. Rubinson (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: 404-881-7000
Email: *jason.rosenberg@alston.com*
Email: *pamela.councillr@alston.com*
Email: *max.rubinson@alston.com*

*Attorneys for Plaintiffs Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc.*

Dated: February 4, 2019                LAW OFFICE OF PAUL W. REIDL

By: */s/ Paul W. Reidl*

PAUL W. REIDL (State Bar No. 155221)
Law Office of Paul W. Reidl
Second Floor
25 Pinehurst Lane
Half Moon Bay, CA 94019
Telephone: (650) 560-8530
Email: paul@reidllaw.com

*Attorney for Farnam Companies, Inc. and Central Garden & Pet Co.*

**CASE MANAGEMENT ORDER**

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]

IT IS SO ORDERED.

Dated: _____

_____
UNITED STATES DISTRICT/MAGISTRATE JUDGE